# FEDERAL DEFENDER SERVICES
## OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin 53703

Telephone 608-260-9900
Facsimile 608-260-9901

January 26, 2020

Honorable James D. Peterson
United States Chief District Court Judge
120 North Henry Street
Madison, Wisconsin 53703

Re:   *United States v. Alex Kawleski*
      Case No. 19-cr-25-jdp

To the Honorable James D. Peterson:

In anticipation of Thursday's sentencing and in support of a 180-month sentence, the defense submits this memo and attached letters. This sentence isn't driven by the instrumental goals of sentencing. The Court doesn't need to deter Kawleski (or others) with this sentence and it doesn't need to protect the community—in the five or six years following this crime, he has turned his life around. Rather, this sentence is governed by the sentencing analysis's moral goals—it is driven by retribution. To that end, while Kawleski's criminal actions are undeniable and call for punishment, 180 months is more than an appropriate sentence.

I've handled this case for almost two years. In that time, I have never backed away from the fact that what Kawleski did back in 2013–14 was deplorable. The Court heard my closing (and quoted it) in its order. This case is terrible. Its baseness lies not just with what the video captures, but also with the underlying dynamics—Kawleski doing this with a sixteen year old who was essentially his step-daughter. Everyone's heart breaks for her.

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable James D. Peterson
June 8, 2020
Page -2-

These deplorable facts certainly inform the sentencing calculus, but those dynamics cannot lure the Court into over punishing Kawleski. There are three essential aspects to this behavior and what the Court has to weigh in arriving at a just sentence: one, the manipulation (getting the victim to have sex with him); two, the act (the actual sex); and three the videotaping (the capturing of an image of that sex).

The manipulation is bad—no question. But it can't be divorced from everything that was happening in Kawleski's life. That is, the Court can't (or shouldn't) define Kawleski based solely on this behavior without looking at the bigger picture. There is a distinction between those who define themselves by fulfilling their sexual urges towards minors, and those who have engaged in uncharacteristically illegal and immoral behavior during a very bad time in their lives. Of course falling into the less deviant camp is not an excuse, but it informs the need to punish. Put differently, the sex offenders who come before this Court fall on a spectrum—they range from the inveterate to those who are the product of circumstance and very, *very* poor judgement. Kawleski falls in the latter category.

Everyone around Kawleski recounts what a terrible time 2012–14 was for him. His significant other ran off with another man. He was facing serious criminal charges for driving a car into his ex's lover's car. PSR ¶ 57. On top of it all, he was dealing with trying to raise kids with an alcoholic; during this time it was not uncommon to get a call every week from the kids stating that "Theresa was unconscious or passed out on the floor from alcohol intoxication." *Id.* ¶ 74. And in response, Kawleski was also drinking—a lot. This all put Kawleski in an incredibly dark place, and his actions reflect that. Again, that doesn't excuse any of what he did, but there's a difference between a predator and someone who in a torrent of terrible decision making engages in this otherwise-isolated behavior. Put differently, Kawleski's manipulation of Amanda does not bear the markings of someone who has this behavior ingrained in his thinking and character such that it would be repeated with others; instead it has the markings of someone who, in a prolonged fit of self-destructive behavior, did some very terrible things. Those circumstances matter.

With that, the Court has to consider his actions. Getting a sixteen year old drunk, having sex with her, and then later secretly videotaping her in the shower is absolutely repugnant. Wisconsin's elected representatives have decided to punish those who engage in this behavior without reference to a mandatory minimum—all of his crimes are eligible for everything between probation and twenty-five years in *See* Wis. Stat. §§ 940.225 (3m)

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
June 8, 2020
Page -3-

and 948.09; *id.* §§ 942.08, 942.09; *see also* Wis. Stat. § 973.01(2)(b)(9); *id.* § 940.225(2)(cm).[1] Again, no one likes what Kawleski did, it's a crime and it needs to be punished; but the more atrocious action is not the videotaping of the sex, it's the sexual act.

The videotaping is, of course, why we're here—that's the federal hook and it carries the hefty mandatory minimum. Anyone who has had these images taken is, of course, traumatized by the idea that they are out there for the world to see—the Jessica and Vicki Series victim impact statements are chilling. Kawleski did not, however, make the videos for profit, nor did he distribute these images. Instead, they were all contained on a single flash drive—a single flash drive that he believed he destroyed in 2016. Again, the defense is not diminishing that it would be hard for the victim to know that he made these videos, but Kawleski's actions producing these images for himself is different from someone who makes these videos and distributes them. In that way, the worst part of this case (and Kawleski's crime) is not the videotaping, but the underlying sexual behavior. For that behavior, punishment is certain; but here, the question centers on whether anything more than 180 months advances the instrumental or moral goals of sentencing.

If this were all uncovered in 2013 or 2014, there would be some lingering fears about Kawleski. I think that 180 months would still be more than enough time, but the case would have a different feel. In the one sense, the Court would be looking at escalating criminal behavior (some of it sexual) from 2010–2014. And the Court would be confronted with a defendant who has an alcohol problem—in short, someone who society would definitely want to protect children from. In 2013 or 14, all of those instrumental concerns of sentencing would be valid, but likely taken care of with the 180-month sentence.

The five year delay between Kawleski's actions and arrest provides this Court with a very good indication of whether Kawleski needed prison to deter him from future criminal conduct or to keep society safe. He doesn't. We know that he made the decision to turn his life around himself, and he stuck to it. It didn't happen until 2015. But when he did, the choice bore real fruit. The PSR and all the letters speak to that undeniable fact.

---

[1] I am going by the charges he currently faces in Wood County. And I do not have a command of Wisconsin's child pornography statute and whether the age of the offense means he would not be eligible for the mandatory minimum three years. *See* Wis Stat §939.617. Regardless, if that applied, he would be facing at least three years in prison. *Id.*

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Honorable James D. Peterson
June 8, 2020
Page -4-

- "In 2015 he became an excellent parent. He made sure the kids got to school, got their homework done and he also attended and participated in all their events. He was at every choir and band concert. Attended all the Teacher's conferences. He also made sure to take them to community events. They regularly went to movie's together and also played board games and video games at home. *He took an interest in all of their interests*. He got Noah a drum set so they could practice together. He sang with Emma to practice for her choir concerts. They became his whole life." Ex. A at 1 (emphasis added).

- "*Alex worked full-time and was able to change his hours so he could pick his kids up from school every day* . . . Alex loves Noah and Emma very much. He was always excited about their school band and choir concerts, which made them proud to perform. He always planned special individual birthday parties for each of them. He planned special activities with Noah and Emma on Teri's birthday and death day to help them get through those very difficult days." *Id.* at 2 (emphasis added).

- "Theresa's death was difficult for the defendant, but he worked hard to care for his children and ensure their needs were met. Despite having a minimal income, he prioritized his children over himself." PSR ¶ 75.

That is, he stepped up, he righted the ship, and he put all that criminal thinking behind him. He was a different person in 2015, from the man he was in 2013–14 and that promising trajectory continued until his arrest.

That point—the fact that he changed completely—cannot be understated. This case uncovered *everything* in his life. Every flash drive was looked at, all his computers analyzed, and his phones were dumped. Yet there's not a single iota (even a hint) of him having done this again or of him having an interest in children or of him doing anything other than working, raising his kids, and trying his best to be a good parent. And while the government may disparage Kawleski's statement that he destroyed (or believed he destroyed) the flash drive in 2016, this claim is consistent with all his other behavior. In disgust, he turned away from that time and put it all behind him. While it's clear that the flash drive remained, it's equally clear that he didn't do anything with it after 2015—that was the last time any of the files were modified.

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.

Honorable James D. Peterson
June 8, 2020
Page -5-


If this case had stayed in Wood County and Kawleski pled to all the charges, it's tough to know what a judge would do. Kawleski certainly did some despicable things. No question. But that was a long time ago, and he was a different man than he is now. It's hard to know if he'd need too much prison, or if the two years he's already served in county jail would be enough. No one knows how it would all shake out. Unfortunately, the appropriate sentence (free of the mandatory minimum) isn't before this Court; the only question before this Court is whether Kawleski's sentence needs to be anything *more* than 180 months.

The defense submits it doesn't. Harkening back to the instrumental and moral goals of sentencing, Kawleski doesn't need to be deterred, nor does society need to be made safe of him and his criminal thinking. The instrumental goals aren't furthered with a sentence beyond 180 months. That leaves the moral goals, punishment for the sake of punishment. Reasonable people often disagree on this point, but it seems to me that 180 months is more than adequate and anything more violates the parsimony clause: it's greater than necessary. *See* 18 U.S.C. § 3553(a).

In sum, throughout much of 2013 and 2014, Kawleski's moral failings were great. And as much as he believed that he put that all past him and moved on, he now has to pay the price for his crimes. Since his arrest, he's certainly suffered: he's lost his kids, he's lost his job, he's lost his house, and he's spent two hard years in county jail. There is little reason to think that the rest of the debt he owes won't be satisfied some time over the next thirteen years that he has to serve in federal prison. Thus, the defense respectfully requests that the Court sentence him to 180 months.

Thank you for your attention to this matter.

Sincerely,

*/s/ Joseph A. Bugni*

Joseph A. Bugni
Associate Federal Defender