IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

ALEXANDER KAWLESKI,                                Case No.:  19-cr-00025-jdp

    Defendant.

GOVERNMENT'S SENTENCING MEMORANDUM

## I.  Introduction

The defendant, Alexander Kawleski, is a sexual predator.  He recorded himself sexually assaulting a then-15 or 16-year-old girl and took numerous other videos of her and another girl in various stages of undress.  Having been caught and convicted of producing child pornography, in violation of 18 U.S.C. § 2251(a) and possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4), he now faces sentencing by this Court.  The guidelines for his offenses are life, capped at the maximum statutory sentence for the counts of conviction: forty years. As explained below, such a sentence is sufficient but not greater than necessary to reflect the gravity of the defendant's crimes and to meet the other sentencing factors under 18 U.S.C. § 3553(a).

## II.  Factual Background

On January 23, 2019, the defendant's girlfriend spent the night at his home.  The next day, suspecting he was cheating on her, she took a flash drive from his home to

look for evidence proving her suspicion. Instead, she found a video of the defendant sexually assaulting Minor A.

The video showed Minor A sitting on a chair. (R. 98, ¶ 16). The defendant is seen handing her a bottle of Mad Dog 20/20. (Id.). At times, Minor A appears to be asleep or otherwise incapacitated and numerous times in the video the defendant tells her to "wake up." (Id.). After lifting her shirt and putting his mouth on her breasts, the defendant pulls down her pants and puts his mouth on her vaginal area. He then brings the camera close to Minor A's vagina and films himself repeatedly digitally penetrating her vagina. (*Id.*).

When interviewed by law enforcement, Minor A reported the defendant would give her alcohol which they would drink together at his house. (R. 98, ¶ 22). She recalled drinking until she passed out a few times, after which her entire body would hurt. (*Id.*). After being shown sanitized images of the assault, she was emotional and said she did not recall the assault occurring.

This was not the first time the defendant sexually assaulted Minor A. As far back as 2005, Minor A reported that the defendant sexually assaulted her. (R. 98, ¶ 25). At that time, she reported that he came home after drinking, got in bed with her, and sexually assaulted her. (*Id.*). She initially denied it to the police, but later said she did so because she was scared and because her mother did not believe her. She reported writing about the incident in her journal and later ripping out the pages.

In 2009, Minor A's friend reported that while staying at Minor A's home, the defendant approached the bed in which she was sleeping, touched the small of her

back, unhooked her bra, and began rubbing her buttocks. (R. 98, ¶ 26). She saw the defendant kneeling next to her wearing only boxer shorts. (Id.). The friend reported the incident to police and also reported reading Minor A's diary, which detailed the above assault by the defendant on Minor A. The friend asked Minor A about the assault and Minor A denied it, saying she was just mad at the defendant.

     Minor A was interviewed about the incident with her friend. (R. 98, ¶ 26). She said she did not observe it because she was sleeping. She believed it occurred, however, because he had done the exact same thing to her. She reiterated the allegations she made in 2005 and confirmed she wrote about it in her diary. (Id.). She also reported that the defendant told her that he peeked under the bathroom door and could see her feet when she was showering. (Id). The government understands the defendant denies these and all allegations of sexual assault other than those charged. The government submits however, it's likely the conduct occurred based on the similarity of the conduct the two children described, and the video evidence in this case.

     Apparently not content with peeking under the door as a method of spying on Minor A while she was showering, the defendant later installed a two-way mirror in the bathroom of his residence so he could film her getting in and out of the shower. (R. 98, ¶ 17). He also filmed one of her friends, Minor B, completely nude – exposing her breasts and vagina, getting out of the shower and drying herself off. (*Id.* ¶ 18).

**III.   Defendant's Objections to the Presentence Report**

   A.   Victim Intoxication

The defendant objects to a four-level enhancement under USSG § 2G2.1(b)(2)(B), claiming the victim was not unconscious. (R. 94, pg. 2). Reports and the video, which the Court saw, show otherwise. According to the application notes, this enhancement applies when the "ability of the minor to apprise or control conduct was substantially impaired by drugs or alcohol." USSG § 2G2.1 n. 2. That's exactly what the video depicts. At times, Minor A is motionless. The defendant tells her to wake up numerous times and is seen giving her alcohol and shaking her, seemingly to make sure she was incapacitated enough for him to assault her undetected. And the victim did not recall the assault. Under these circumstances, the enhancement was properly included in the calculations. Should the Court find the victim was not incapacitated, the defendant would still be subject to a two-level enhancement pursuant to USSG § 2G2.1(b)(2)(A) for the commission of a sexual act.

   B.   Acceptance of Responsibility

The defendant next claims he is entitled to a reduction for acceptance of responsibility, claiming he never denied the conduct seen in the video. (R. 94, pg. 2). Nor could he - it was on video. But that does not mean he accepted responsibility. In fact, he admits as much, saying he only contested whether the conduct met the elements of a federal crime. (*Id.*).

The central purpose for an acceptance of a responsibility reduction is to "reward those who plead guilty-saving the judiciary and Government the time, expense and

4

effort of trial-or who take 'some other equivalently concrete act, such as pretrial payment of full restitution.'" *United States v. Bonanno*, 146 F.3d 502, 512-13 (7th Cir. 1998) (quotation omitted). The defendant put the government to its burden of proof and is not entitled to the reduction.

Moreover, the defendant continued to challenge his conviction to the very end, proffering in his motion for a new trial that he burned the thumb drive that he produced and trying to claim Tracy Brown transferred the images onto the PNY thumb drive that was the basis for the federal charge. A reduction for acceptance is simply unwarranted.[1]

    C.    <u>Sado-Masochistic Enhancement</u>

The defendant claims that he should not receive a 4-level enhancement pursuant to USSG § 2G2.1(b)(4)(A) because his assault of Minor A was not sadistic or masochistic. (R. 94, pg. 2). The enhancement applies not only to acts that cause physical pain but also to sexual images of conduct which cause mental suffering or psychological or emotional injury to the victim. *United States v. McLaughlin*, 760 F.3d 699, 704 (7th Cir. 2014) (citations omitted). As the PSR addendum explains, the victim was humiliated by the defendant's acts. (R. 99). The enhancement is, therefore, warranted.

In addition to the humiliation the victim experienced, Courts have held that sexual penetration of a minor is sadistic or violent. *McLaughlin*, 760 F.3d at 704. This includes digital penetration. *United States v. Morgan*, 842 F.3d 1070, 1076 (8th Cir. 2016).

---

[1] Should the court disagree, the government does not intend to move for the third point.

D.   Custody, Care, or Supervisory Control

The defendant objects to a 2-level enhancement pursuant to USSG § 2G2.1(b)(5) because he is not Minor A's parent, relative or legal guardian and she did not live with him at the time. (R. 94, pg. 2). This enhancement is intended to have broad application and includes teachers, day-care providers, babysitters, or other temporary care takers. The victim was a minor who spent nights at the defendant's home. She was in his temporary care and custody on those occasions, regardless of the legal relationship.

E.   Dismissal of Possession Charge

The defendant claims that the defendant's conviction for possessing child pornography should be dismissed because it is a lesser offense of production. The government disagrees. Because the evidence shows the charges have different elements, both convictions should stand. *See United States v. Halliday*, 672 F.3d 462, 466 (7th Cir. 2012) citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The defendant cites a 9th Circuit case for the proposition that one cannot be convicted of both possession and receipt of child pornography. The 7th Circuit, while indicating it may ultimately rule the same way, does not appear to have done so yet. *Halliday*, 672 F.3d at 470. And there do not appear to be any cases that say possession is a lesser offense of production. This may be in part because of different scienter requirements – both possession and receipt of child pornography require knowing the images at issue depict minors. Production of child pornography has no such requirement. *See United States v. Fletcher,* 634 F.3d 395, 401-02 (7th Cir. 2011); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 76 n. 5 (1994). Additionally, production

6

involves the use of a minor while possession does not.  For those reasons, possession is not a lesser-included offense of production and that count should not be dismissed.

    F.    <u>Supervised Release Conditions</u>

The defendant objects to the following proposed conditions of supervised release:

    i.    <u>Condition 1 – Travel outside the district</u>

Because travel is not prohibited, but merely needs to be approved by the supervising agent, the Government believes this condition is appropriate.  The defendant will be a registered sex offender and knowledge of his whereabouts is necessary to ensure compliance with any registration requirements.

    ii.    <u>Condition 10 – Prohibition against acting as an informant</u>

Again, this conduct is not prohibited but simply requires permission.  Permission is necessary both to protect the defendant and to ensure that any plan he might enter into does not involve contact with minors or create any other situation that might cause him to violate other supervised release conditions.

    iii.    <u>Condition 13 – Possession of weapons</u>

This requirement is necessary to ensure the safety of the supervising probation agent. Additionally, as a felon, the defendant will be prohibited from possessing any firearm or ammunition.

    iv.    <u>Condition 17 – Possession of visual or recording devices</u>

Because the possession is not prohibited, but again, merely needs to be approved by the supervising agent, the Government believes this condition is warranted.

Disclosure of the devices the defendant owns will allow the supervising agent to appropriately monitor them, something necessary following convictions for child exploitation crimes.

      v.      Condition 19 – Polygraph examinations

Polygraphs are an approved treatment tool. *See United States v. Kappes,* 782 F.3d 828, 855-56 (7th Cir. 2015). The test results are not admissible and will not infringe on his Fifth Amendment right to be free from self-incrimination, but rather will assist in the treatment of the defendant, something both the defendant and the community benefit from.

      vi.      Conditions 20 and 21 – Prohibition of contact with minors

The defendant's objection to these conditions completely ignores the prior allegation by Minor A and the allegation of her friend. Contrary to the defendant's assertion that his conduct occurred over only 15 months, there are reports of it occurring since 2005. While the defendant denies these allegations, they appear to be credible based on his conduct in this case and cannot be ignored.

## IV. Sentencing Argument

The defendant's guidelines call for life in prison. The statutory maximum of forty years' imprisonment is both the correctly calculated guidelines sentence and sufficient but not greater than necessary to satisfy the purposes of sentencing, as set forth in 18 U.S.C. § 3553(a). Even if the Court were to agree with all the defendant's objections, the defendant's guideline range would be 262-327 months. Nothing suggests a sentence lower than that is appropriate in this case.

A. The Nature and Circumstances of the Offense

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (en banc) (citation omitted). "Long-term studies show that sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *Id.* at 1207 (collecting authority). "The damage to children who are the victims of sexual abuse is not limited to psychological and emotional injury; serious physical injuries often result as well." *Id.* (citing authorities).

"When child pornography is produced in conjunction with the sexual abuse of children, as it was here, the harm to the child victims is magnified and perpetuated." *Id.* at 1208. "[T]he materials produced are a permanent record of the children's participation." *United States v. Ferber*, 458 U.S. 747, 759 & n.10 (1982).

The victims will have to live with the knowledge of what the defendant did to them for the rest of their lives. For Minor A, who had a trusted relationship with the defendant, the conduct was even worse. The Court saw both victims in this case testify. Their anguish was apparent. It should not be overshadowed by the emotion showed by the defendant.

B. The History and Characteristics of the Defendant

According to Minor A, the defendant first sexually assaulted her in 2005. While she later recanted, she reported doing so because her mother did not believe her and because she was scared. She did, however, document the abuse in her diary. It seems

9

highly unlikely she fabricated the abuse, especially when the conduct she reported was like that reported by her friend several years later.

In 2009, the defendant was convicted of 4th degree sexual assault and battery for assaulting one of Minor A's friends. While the defendant continues to deny the conduct, this child would have no reason to make it up. Moreover, the defendant was convicted of it. At a plea, the defendant would have had to admit to a factual basis to support the charges. So, either he assaulted the child, or he lied about it.

As a result of this conviction, he was required to attend sex offender treatment, which he apparently successfully completed. (R. 98, ¶ 57). Even after completing sex offender treatment, he sexually assaulted Minor A, installed a two-way mirror in the bathroom of his home, and recorded Minor A and Minor B as they got in and out of the shower. The fact that he did this after undergoing sex offender treatment proves he is a danger to the community and should be incarcerated for as long as possible.

Finally, while the defendant expresses some remorse for his kids and Minor A, he seems more concerned about himself. (R. 98, ¶ 34). He is afraid that his kids' friends' parents think differently of him. He feels "labeled" and does not like being grouped with "other, more violent pedophiles." (Id.). He is worried about his record and how it will impact his future. (Id.).

In sum, the defendant's offenses of conviction are not isolated events. Instead, they show a pattern of victimizing young girls. He shows little remorse and is more concerned about himself than his victims. All these factors weigh strongly in favor of a Guidelines sentence.

### C. The Need for the Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment

Congress's intent to treat offenses involving child pornography severely, and its concern with below-Guidelines sentences, is evident in statutes such as 18 U.S.C. § 3553(b)(2), which permitted courts to depart below guideline ranges for such offenses only in very limited circumstances.  Although § 3553(b)(2) is no longer a mandatory limitation, in light of *Booker* concerns, the importance of sentencing courts' consideration of Congress's legislative judgment remains.  *See, e.g., United States v. Pugh*, 515 F.3d 1179, 1197-98 & n.12 (11th Cir. 2016) (citing detailed congressional findings about the harm child pornography causes and recognizing that, "[i]n light of these detailed legislative findings and numerous legislative enactments, we cannot help but underscore the seriousness of this crime").

A Guidelines sentence in this case reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment.  A lesser sentence— especially anything close to the statutory minimum of fifteen years for production— does not.  As the *Irey* court explained, "[a] person who traveled to another country and took a single photograph of a 17-year-old engaging in an obscene pose by herself would be guilty of violating the same statute and be subject to a mandatory minimum sentence of 15 years in prison."  *Irey*, 612 F.3d at 1209.  Given the defendant's conduct in this case, including assaulting Minor A, taking numerous videos of Minor A getting in and out of the shower, and recording Minor B getting in and out of the shower, his sentence

should be significantly "more than if all he had done was on a single occasion snap a single photo of a single, teenage child in an obscene pose by herself." *Id.*

The United States requests that the Court impose a sentence that takes into account the full impact of the crime on the victims, remembering that the victims in this case have already been subjected to a lifelong scar worse than any punishment the defendant could now receive. For all these reasons, a Guidelines sentence is appropriate here.

> D. The Need to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and to Provide the Defendant with Treatment

The sentence in this case must constitute a loud message to potential sexual offenders that severe consequences will result from such heinous acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child pornography context.'" *Irey*, 612 F.3d at 1211 (quoting *Pugh*, 515 F.3d at 1194). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* (quoting *Pugh*, 515 F.3d at 1194); *accord United States v. Garthus*, 652 F.3d 715, 721-22 (7th Cir. 2011). The need for effective deterrence through severe sentences is therefore critical.

A Guidelines sentence is additionally appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 438 U.S. 84, 103 (2003). "Studies and reports in this field are consistent with what judicial decisions show: pedophiles who have sexually abused

12

children are a threat to continue doing so, and age does not remove the threat." *Irey*, 612 F.3d at 1214 (discussing the studies and case law); *see also Garthus*, 552 F.3d at 720 (discussing studies and highlighting that "[a] pedophilic sex offender who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense").

Though no study can predict whether the defendant will offend again, his history and characteristics suggest those concerns are well-founded here. As noted above, the defendant engaged in such conduct over the course of years. He committed the offenses in this case after undergoing sex offender treatment. The defendant appears more concerned with how his conviction will affect him than "anyone he hurt." That, and the fact he "feels labeled and does not like being pooled in the same way as 'other, more violent pedophiles,'" (R. 98, ¶ 34), shows complete ignorance of the damage his actions caused the two victims in this case. Being unable to recognize the seriousness of his actions makes him more likely to reoffend.

The fact that the defendant will be subject to restrictions and supervised release if he gets out of prison does not offer any guarantee that he will not offend again. *See Irey*, 612 F.3d at 1215 (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism"). In short, "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does." *Id.* at 1216.

And even if a defendant *could* be described as a "low risk" to recidivate (though there is no evidence of this in the present case), "[a] low risk is not the same as no risk." *Id.* at 1216-17. "Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *Id.* at 1217. As in *Irey*, "[w]ith child sexual abuse of the kind that we know [the defendant] is capable of and has committed, the harm is enormous and permanent. It can literally destroy lives. Accordingly, even with an assumed low risk of recidivism following release [after what must be *at least* 15 years, given the mandatory minimum], imprisonment for that length of time does not afford adequate protection from further crimes by him." *Id.*

    E.    <u>The Need to Avoid Unwarranted Sentencing Disparities</u>

A Guidelines sentence would also avoid unwarranted disparities and be sufficient but not greater than necessary to accord with the purposes of sentencing under 18 U.S.C. § 3553(a). Notably, district courts within this Circuit have repeatedly ordered, and the Seventh Circuit has repeatedly affirmed, sentences at the statutory maximum, and/or otherwise decades-long, for similar conduct. *See, e.g., United States v. Russell*, 662 F.2d 831, 852-54 (7th Cir. 2011) (effective life sentence for 48-year-old who produced lascivious images of 2 daughters); *United States v. Scholtes*, 447 F. App'x 730, 731-32 (7th Cir. 2011) (50 years for producing sexually explicit photo of 10-year-old boy defendant was chaperoning); *United States v. Huffstatler*, 571 F.3d 620, 621-22, 624 (7th Cir. 2009) (above-Guidelines sentence of 37.5 years for production involving 14-year-

14

old); *United States v. Turner*, 206 F. App'x 572, 573-74, 577-78 (7th Cir. 2006) (100 years for production involving daughter and teenage friend).[2]

So have courts in other jurisdictions. *See, e.g.*, *Irey*, 612 F.3d at 1220-21 (providing extensive string cite of cases affirming sentences of 30 to 140 years for production offenses). Of course, what this Court is asked to decide is not what sentence was appropriate in other cases, but what sentence is appropriate for this defendant. The cited cases reinforce that a Guidelines sentence would not be unreasonable for this defendant and in fact is the appropriate sentence.

## V.     Conclusion

The defendant is sexual predator who has abused at least three victims. He faces an advisory Guidelines sentence of life in prison, capped at a statutory maximum of 40 years. The Government respectfully requests that the Court impose that sentence.

Dated:  January 26, 2021

Respectfully submitted,
SCOTT C. BLADER
United States Attorney

By:      /s/
ELIZABETH ALTMAN
Assistant United States Attorney

    /s/
LAURA PRZYBYLINSKI FINN
Assistant United States Attorney

---

[2] *Cf. Garthus*, 652 F.3d at (30-year sentence for non-production offenses for 44-year-old offender who previously molested child); *United States v. Snodgrass*, 635 F.3d 324, 330 (7th Cir. 2011) (above-Guidelines sentence of 30 years for attempted receipt and possession, where defendant had "lifelong pattern of abusive behavior against minors"); *United States v. Maulding*, 627 F.3d 285, (7th Cir. 2010) (20-year sentence for non-production offenses); *United States v. Stinefast*, 724 F.3d 925, 933 (7th Cir. 2013) (above-Guidelines sentence of 18 years for distribution where defendant had previously had boys expose their genitals to him).